No. 20979.

LAWRENCE WILEY *v.* JOHN F. BYRD, ET AL.
(408 P.2d 72)

Decided November 22, 1965.

H. EARL MOYER, for plaintiff in error.

FELIX D. LEPORE, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE McWILLIAMS.

JOHN BYRD and his wife, Birdie Byrd, entered into a written contract with Riverlea Homes, Inc., a Colorado Corporation, whereby Riverlea Homes, Inc. agreed to construct a dwelling house on certain described premises, and upon completion of the aforesaid dwelling house to then convey the property to the Byrds "in fee simple by warranty deed, without encumbrance." In consideration for the several promises made by Riverlea Homes, Inc., the Byrds agreed to pay Riverlea Homes, Inc. the sum of $16,300. The Byrds paid Riverlea Homes, Inc. the sum of $50 at the time the aforementioned contract was signed by the parties thereto, the contract

providing that the balance of the purchase price was to be due and owing "upon completion of the dwelling and delivery of the deed" to the Byrds.

The contract further provided that if the Byrds could sell the house in which they were then residing they would in such event pay the net proceeds derived from such sale to Riverlea Homes, Inc., and this sum would then be applied on the total purchase price of $16,300.

This contract further provided that in the event the Byrds were unable to sell the residence in which they were then residing within 90 days from the date the contract was signed by the parties, the Byrds would then convey said property to Riverlea Homes, Inc., which company would then credit the Byrds with the sum of $9,870 (less existing encumbrances), such sum being applied on the total purchase price of $16,300.

After some delays, Riverlea Homes, Inc. completed the dwelling house which it had promised to construct for the Byrds and the latter took possession of their new home. The Byrds, however, did not get a deed therefor from Riverlea Homes, Inc., nor have they ever received one. And after residing in their new home for about two months they were forced to move therefrom as the result of foreclosure proceedings.

In the meantime the Byrds had been unable to sell their "old" residence within 90 days and so, at a time when the Byrds had vacated their "old" residence, Riverlea Homes, Inc., with the aid of a realtor named Zollinger, sold the property to one Landree, with the Byrds under the terms of the contract being then entitled to a credit on the total purchase price in the sum of $9,870, less encumbrances.

As noted above, though the Byrds did obtain temporary possession of their new home, they never obtained a deed thereto, all of which is the gravaman of their present complaint. At the time when the Byrds went into possession of their new home, Riverlea Homes, Inc. was in financial straits, and there were many liens

against the property. To take care of "some" of these lien claimants, the Byrds gave Riverlea Homes, Inc. an additional $1,000.

It was in this setting that the Byrds eventually sought redress in court for their several grievances. Specifically, the Byrds brought an action against Riverlea Homes, Inc., its president, one Lawrence Wiley, the realtor Zollinger, and Landree. The gist of the complaint would appear to be that the Byrds were of the view that Riverlea Homes, Inc. had breached its contract, and should accordingly be made to respond for the damages resulting therefrom. Also, the Byrds in a second claim alleged fraud on the part of Lawrence Wiley and Zollinger and in connection therewith sought money damages from both Wiley and Zollinger, as well as a body judgment against Wiley. Finally, in their complaint the Byrds sought an "order" that their interest in their "old" home be declared to be "senior and superior" to that of Landree.

Trial to the court culminated in a judgment dismissing Byrds' complaint against Zollinger and Landree. At the same time, however, the trial court entered judgment in favor of the Byrds and against Riverlea Homes, Inc., and its president, Lawrence Wiley, in the amount of $5,057.83, though it declined to enter a body judgment against Wiley. The present writ of error is directed solely to the judgment entered against Lawrence Wiley and in favor of the Byrds. In other words, Riverlea Homes, Inc. has sought no review of the judgment entered against it, and neither have the Byrds caused any writ of error to issue to the judgment dismissing their claim against Zollinger and Landree.

It is rather evident under the facts and circumstances set forth above that Riverlea Homes, Inc. did breach its contract with the Byrds, and that for such breach it should be called upon to respond for the damages flowing therefrom. However, from the record before us, it is equally clear that Riverlea Homes, Inc. is finan-

cially unable to so respond, and under such circumstances the desire of the Byrds to hold Wiley responsible for their damages is most understandable. Legally, however, their position is untenable.

Lawrence Wiley, as already mentioned, was president of Riverlea Homes, Inc., and it was he who represented that corporation in all of its dealings and negotiations with the Byrds. The trial court found that Wiley had "mislead" the Byrds and made "misrepresentations" to them in two particulars: (1) when the contract was entered into by the parties Wiley knew or should have known that Riverlea Homes, Inc. could never convey the premises upon which it thereafter built a house for the Byrds "free and clear of all encumbrances"; and (2) Wiley knew that Riverlea Homes, Inc. was in "bad financial straits" — not as of the date the contract between the parties was entered into — but as of some eight months later.

We have carefully reviewed the rather voluminous record, and are convinced that the judgment against Lawrence Wiley under well established rules can not be permitted to stand. The Byrds most certainly did have an action *ex contractu* against Riverlea Homes, Inc., but under the circumstances disclosed by the record they do *not* have an action *ex delicto* against Lawrence Wiley.

Many decisions of this court point up that fraud must be pleaded with considerable particularity and upon trial proof thereof must be quite clear and convincing. Fraud may of course manifest itself in a multitude of forms, but the component parts of fraud are so well recognized and have been so oft-repeated by this court that they may now be said to be elementary. For a definitive statement as to the essentials in a charge of fraud, see, e.g., *Morrison v. Goodspeed,* 100 Colo. 470, 68 P.2d 458. *See also Corder v. Laws,* 148 Colo. 310, 366 P.2d 369; *Bell Press, Inc. v. Phillips,* 147 Colo. 461, 364

P.2d 398; and *Ginsberg v. Zagar,* 126 Colo. 536, 251 P.2d 1080.

■ Our examination of the record as made upon trial discloses that many — if indeed not all — of the essentials in a charge of fraud are singularly lacking. Without going into unnecessary detail, it is sufficient to observe that Wiley made no false representation of any material existing fact which in anywise induced the Byrds to enter into the contract with Riverlea Homes, Inc., nor did he conceal any material existing fact which in any manner tended to induce the Byrds to so contract.

■ Similarly, the further finding by the trial court that some eight months after the date the contract was entered into, Wiley "knew or should have known" that Riverlea Homes, Inc. was then in "bad financial straits" is under the circumstances quite immaterial. In fact the Byrds then knew about the general financial problem of Riverlea Homes, Inc., and with such knowledge nonetheless gave that company $1,000 to pay off "some" of the liens then outstanding against the property which they hoped to acquire free and clear from Riverlea Homes, Inc.

The judgment is reversed and the cause remanded with directions to dismiss the Byrds' claim against Wiley.

MR. JUSTICE MOORE and MR. JUSTICE DAY concur.