Present: Carrico, C.J., Compton, Lacy, Hassell, Keenan, and
Koontz, JJ., and Whiting, Senior Justice

EDWARD H. RIPPER, ET AL.
                          OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 961353            February 28, 1997

EDWARD H. BAIN, JR.

              FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                    Dixon L. Foster, Judge Designate


     The appellate issue in this negligence action alleging

attorney malpractice is whether the trial court erred in ruling

that the clients failed to establish a prima facie case.

     Appellants Edward H. Ripper and Phyllis O. Ripper filed this

action against appellee Edward H. Bain, Jr., seeking recovery in

damages based upon Bain's alleged negligence in furnishing legal

advice in connection with a real estate transaction.  Following

presentation of the plaintiffs' evidence in a trial by jury, the

court below granted defendant's motion to strike the evidence and

entered summary judgment for the defendant.  The court ruled that

plaintiffs had failed to establish "there was negligence on the

part of the defendant that caused any damage" to the plaintiffs.

 They appeal.

     Because the trial court struck the plaintiffs' evidence, the

sufficiency of that evidence to sustain a recovery is challenged.

 Therefore, we shall consider the evidence, and all reasonable

inferences drawn from it, in the light most favorable to the

plaintiffs.  Page v. Arnold, 227 Va. 74, 76, 314 S.E.2d 57, 58

(1984).

     On March 29, 1989, plaintiffs executed a contract agreeing

to purchase 761 acres of land in Albemarle County.  Known as Bright Berry Farm, the tract is bounded on the north and northwest by the Shenandoah National Park, on the west by Doyles River, on the east by a high ridge line, and on the south by State Route 810.  There is a dwelling and approximately 230 acres of gently rolling bottomland in the southern portion along the river; the remainder is "very mountainous and heavily timbered" with an increase in elevation of about 1600 feet from the southern portion up to the Park's border.

State Route 629 meanders generally north and south through the property for "approximately a mile and eight tenths."  It runs from Route 810, past the dwelling, and up to the Park boundary.

Route 629 has two distinct segments, approximately equal in length.  The lower portion, running north from Route 810, is state-maintained and surfaced with crushed stone.  At the point where state maintenance ends, the road "very dramatically changes character."  From that point, the upper portion "is a really bad mountain road with big rocks in it."  The only vehicles that can safely use the upper portion must be equipped with four-wheel drive.

During negotiations with the sellers, the plaintiffs, having inspected the land, decided they "didn't want this property with a road that the public had the right to use."  Thus, the contract included provisions that would allow the plaintiffs "to determine

rights and responsibilities with respect to a road running through the property." The contract contained an option allowing the plaintiffs 45 days to conduct "a feasibility study." The contract also provided that the plaintiffs would not be bound if, during the study, it was determined "that the property is subject to restrictions, rights, or easements which are unacceptable" to the plaintiffs.

On April 4, 1989, six days after the plaintiffs executed the contract, Mr. Ripper telephoned defendant Bain, a Charlottesville attorney. Ripper, a certified public accountant, resided in Arlington. Ripper called Bain because of Bain's reputation as an attorney experienced in real property matters and because he was serving on the Board of Supervisors of Albemarle County.

During the telephone conversation, Ripper explained the property was under contract with a 45-day option. He advised defendant that the plaintiffs' purchase "was contingent" upon defendant telling Ripper "that we could gate this road and restrict access to all or a portion of this road." Ripper told defendant that he "needed" defendant "to research that issue along with some other things." Ripper engaged defendant as plaintiffs' attorney during the conversation and sought his advice concerning the road's status.

Two weeks later, on April 18, 1989, defendant telephoned Ripper and advised that he "had a legal right" to "gate the road at the end of state maintenance and restrict the public from the

upper part of the road."  A discussion about the abandonment of public roads followed.  According to Ripper, defendant then "said that because I had the legal right to gate the road and restrict access to the upper portion of the road, that he didn't see any reason why the Board of Supervisors wouldn't vote in favor of a petition to abandon the lower part of the road."  According to Ripper, defendant stated that such Board action was "likely" because the lower portion "didn't go anywhere . . . it was as though the road ended and from that point on it was my private property."

When defendant rendered the foregoing advice, the only information he had available was a title insurance policy commitment and pertinent deed book pages provided by the title company.  The title insurance binder included an exception for: "Rights of the public and others in and to those portions of the insured property lying within the bounds of State Route 810, State Route 629, and old road, as shown on plat recorded in Deed Book 348, page 392."

Dated in 1959, the plat shows Route 629 beginning at Route 810 at the southern end of the property and proceeding north a short distance past the house.  At this point, the line representing the road on the plat stops.  From that point, Route 629 is not shown on the plat.  At the northwestern boundary of the tract, another road is shown proceeding south out of the Park labelled "Brown's Gap Road."  According to an expert witness,

"Brown's Gap Road was Stonewall Jackson's favorite route between the Valley and Charlottesville." In the large area between the two end segments, no road is shown.

At the time defendant gave the advice, he had not "visited" the property, and had done no research on whether any portion of Route 629 had lost its public status. At that time, defendant "had no way to know whether State Route 629 only went one foot onto the Rippers' property, crossed the entire property or did anything in between."

After rendering advice about the road's status, defendant mailed a copy of the title insurance exceptions and the 1959 plat to the plaintiffs. Upon receipt, Mr. Ripper "found the information to be a little bit confusing relative to the advice" defendant had given. Thus, Ripper called defendant to be assured that the information in the documents did not "change anything" about defendant's advice that plaintiffs could "gate that road and restrict access to the upper portion of that road." Defendant confirmed his earlier advice.

Relying upon defendant's advice, the plaintiffs decided to purchase the property in accordance with the sales contract. Just prior to the closing of the transaction, plaintiffs met with defendant in his Charlottesville office on September 1, 1989. Defendant confirmed "one last time" that plaintiffs "had the right to erect a gate at the end of state maintenance and restrict all or prohibit all the public's use to that upper

section of the road."

The property was conveyed to the plaintiffs by deed dated September 7, 1989. Within weeks, the plaintiffs erected a gate at the end of state maintenance closing the upper portion of the road. As a result, public "traffic" on the upper portion ceased. In the months following erection of the gate, public traffic on the lower portion "virtually decreased to nothing."

In October 1989, a local surveyor acting on behalf of the plaintiffs filed a petition with the Albemarle County Board of Supervisors to have the lower portion of the road abandoned. During hearings on the petition, defendant did not participate either as a supervisor or as an attorney for the plaintiffs.

At a November 8, 1989 hearing, the County Attorney took the position that the public might have the right of access to the road's upper portion. According to Mr. Ripper, this was the first time anyone suggested to him that the upper portion was a public road. Defendant then told Ripper to "find another lawyer."

Upon defendant's recommendation, the plaintiffs retained Frederick W. Payne, a Charlottesville attorney, who represented them in connection with the petition before the Board. Ultimately, the Board denied the petition.

The Board then filed an action against the Rippers in the United States District Court for the Western District of Virginia seeking removal of the gate. In January 1992, the federal court

ruled that the upper portion of the road was public and ordered removal. Immediately, the gate was removed.

The plaintiffs filed another petition with the Board, asking the Board to abandon the public road through the entire property. Even though the plaintiffs offered, among other things, to permit pedestrian access to Shenandoah National Park if the Board would abandon the road, the Board denied the second petition. As a result, the entire road on the property is public.

At trial, Payne testified for the plaintiffs as an expert in real estate law. He opined that on April 18, when defendant gave his advice about the status of the road armed only with the title binder and the 1959 plat, it was impossible to know from the plat whether Route 629 extended up to and north of the end of state maintenance. The expert testified that it was negligent for an attorney to render an opinion, based only on the binder and the plat, upon plaintiffs' right to exclude the public from the road's upper portion.

The expert also testified that a prudent attorney should first have ascertained whether Route 629 and Brown's Gap Road on the plat were the same road. Next, according to the witness, the attorney should have determined the "status" of the road "in its various parts," that is, whether it was a public road still in the state highway system or whether it had been abandoned, in whole or in part. The expert said that unless a lawyer went "through those steps," advice upon whether or not the public had

the right of access to the road's upper portion would "constitute a breach of the standard of practice."

An attorney is liable to the client for damages caused by the attorney's negligence.  Code § 54.1-3906; <u>Ortiz</u> v. <u>Barrett</u>, 222 Va. 118, 126, 278 S.E.2d 833, 837 (1981).  <u>See</u> <u>also</u> Code § 26-5.  In order to establish a claim of attorney malpractice, a client must show that the attorney failed to exercise a reasonable degree of care, skill, and dispatch in rendering the services for which the attorney was employed.  <u>Heywood & Lee Constr. Co.</u> v. <u>Sands, Anderson, Marks & Miller</u>, 249 Va. 54, 57, 453 S.E.2d 270, 272 (1995).  Ordinarily, the questions whether an attorney has exercised the required degree of care and, if not, whether the failure was a proximate cause of the client's loss are to be decided by a fact finder, after considering expert testimony.  <u>Id</u>.

In the present case, the trial court granted the motion to strike solely upon the grounds that the plaintiffs had failed to prove negligence, proximate cause, and damages.  This was error.

First, we hold that the plaintiffs established, prima facie, negligence and proximate cause with regard to defendant's advice about the status of the road's upper portion.  The plaintiffs proved that they sought defendant's professional legal advice about the public's right to access various portions of the road through the property.  Defendant, according to the expert testimony, negligently advised plaintiffs they could lawfully

exclude the public from the road's upper portion.  Relying on this advice, the plaintiffs purchased the property, and proved they would not have done so without defendant's assurance that they could restrict public access to the upper portion.

We further conclude, however, that the plaintiffs failed to establish defendant committed malpractice in giving advice on the status of the road's lower portion.  The plaintiffs' expert did not give an opinion on that subject.  Moreover, the advice that the Board of Supervisors "likely" would vote to abandon the lower portion, and the statement by defendant that "he didn't see any reason" why the Board would not grant an abandonment request, amounted to no more than pure speculation about the results of the political process.  This was not professional legal advice, even coming from a sitting member of the government body.

Second, we hold the plaintiffs proved, prima facie, that they suffered damage as the result of the defendant's negligence.  The measure of damages for attorney malpractice in a case like this is the difference between the value of the property bargained for and the value of the property actually received.  Duvall, Blackburn, Hale & Downey v. Siddiqui, 243 Va. 494, 498, 416 S.E.2d 448, 450 (1992).  See Carstensen v. Chrisland Corp., 247 Va. 433, 444, 442 S.E.2d 660, 666-67 (1994); Long & Foster Real Estate, Inc. v. Clay, 231 Va. 170, 175-76, 343 S.E.2d 297, 300-01 (1986).  In meeting their burden to establish damages, the plaintiffs may show the actual price paid for the property in

order to prove the value of the property bargained for. Carstensen, 247 Va. at 444, 442 S.E.2d at 666-67.

Here, Mr. Ripper testified that the plaintiffs paid $1,070,750 for the property, the defendant having stipulated that this price was the result of an arm's-length transaction. And, the value of the property actually received, that is, with the entire road public, was established in two ways. First, Mr. Ripper opined that the value of the tract was $300,000 to $400,000 less with the public road running across it. Second, the plaintiffs' expert appraiser said the fair market value of the property on the date of the conveyance "with the public road in place all up and down the property" was $720,000.

The plaintiffs also presented evidence of damage by proving the attorney's fee paid to Payne for representing them during some of the abandonment proceedings and during the federal court action. The trial court implicitly ruled the plaintiffs were not entitled to recover this loss, and plaintiffs contend this was error. We will not rule on this damage issue because this case will be remanded and the playing field will be different upon remand. We have ruled the defendant was not guilty of malpractice regarding his advice about abandonment of the road's lower portion but that a prima facie case has been established about the advice regarding the upper portion. Upon retrial, the attorney's fees that the plaintiffs will be entitled to recover as damages must relate only to the fees proximately resulting

from any acts of negligence regarding defendant's advice as to the upper portion.

In addition, the trial court excluded certain expert testimony on value of the property at the time of sale under various conditions:  if the lower portion was public and the upper portion private, and if the entire road was private.  Upon retrial, the value under the former condition should be admitted while the value under the latter condition should be excluded again as speculative.  Because of the view we have taken of this case, under no circumstances will the plaintiffs be entitled to recover damages from defendant on the theory that the entire road was private; the plaintiffs were aware that the lower portion was public, and the defendant, as we have said, was not guilty of malpractice in his advice with regard to that portion.

Because the case will be remanded, we should address several issues raised on appeal that may arise during a new trial. Credibility of witnesses upon precisely what advice defendant rendered is an important aspect of this case because defendant disputes much of the plaintiffs' evidence on this issue.  Indeed, in what comes close to a concession that the trial court erred in striking the evidence, the defendant states on brief:  "This case boils down to the word of Edward H. Ripper versus the word of Edward H. Bain."

The trial court excluded the testimony of two plaintiffs' witnesses who, plaintiffs say, would have testified Mr. Ripper

told them that defendant had said the plaintiffs could exclude the public from the upper portion of the road. These prior consistent statements were offered under the so-called "recent fabrication" or "motive to falsify" exception to the rule that such statements are inadmissible hearsay. <u>See</u> <u>Faison</u> v. <u>Hudson</u>, 243 Va. 397, 404-05, 417 S.E.2d 305, 309 (1992).

But the record is insufficient to enable us to rule on this issue; the precise testimony of these witnesses on this subject is not presented by any meaningful proffer. We simply do not know from this record what these witnesses would have said had they been permitted to testify on this issue.

Consequently, because the trial court erred in striking the plaintiffs' evidence, the judgment below will be reversed and the case will be remanded for a new trial.

<u>Reversed and remanded</u>.