Present:  Hassell, C.J., Keenan,[1] Koontz, Lemons, Goodwyn and
Millette, JJ., and Russell, S.J.

NANCY E. JOHNSON

v.  Record No. 090984         OPINION BY JUSTICE DONALD W. LEMONS
                                          April 15, 2010
JOHN W. HART, ET AL.


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                      Frederick B. Lowe, Judge

    In this appeal we consider whether a sole testamentary

beneficiary, in her individual capacity, may maintain a legal

malpractice action against the attorney for the estate for the

attorney's allegedly negligent services rendered to the estate.

We also consider whether the prevailing party in the circuit

court, by endorsing the final order "seen and consented to,"

has expressly waived any arguments he presented to the trial

court.

                I.    FACTS AND PROCEEDINGS BELOW

    On January 17, 2007, Nancy E. Johnson ("Johnson") filed a

complaint against John W. Hart and John W. Hart, P.C.

(collectively, "Hart"), alleging that Hart committed legal

malpractice after being retained to provide legal counsel and

advice regarding the probate of Johnson's mother's estate ("the

Estate").  As a result of Hart's alleged malpractice, Johnson

_____

        [1] Justice Keenan participated in the hearing and decision
of this case prior to her retirement from the Court on March
12, 2010.

asserted that she was removed from her position as the executor of the Estate and suffered pecuniary loss.

Hart filed an answer, affirmative defenses, and demurrer. Hart's demurrer asserted that Johnson's complaint failed to state a cognizable claim because Hart represented Johnson as the executor of the Estate, not in her individual capacity. Accordingly, any proper claim would be in the name of the Estate "and/or by [Johnson], in her capacity as" the executor.

Subsequently, Hart filed a motion for summary judgment, along with a supporting memorandum. In order to provide an adequate record for the trial court to rule on the summary judgment motion, the parties stipulated to the following facts:

1. Peggy Johnson was the mother of [Johnson] and Andrea S. Johnson, and Peggy Johnson died on July 23, 2002, having executed her Last Will and Testament on December 5, 1980.

2. [Johnson] was referred to [Hart] and met with Hart and asked Hart to represent the [Estate] and assist in having [Johnson] qualified as the Executrix of the Estate.

3. There was no written contract or fee agreement between the Estate [and] Hart, and Hart represented the [Estate] between August 19, 2002 through May 13, 2005, when he ceased any representation of the Estate.

4. The claim being asserted by [Johnson] arises out of the alleged malpractice of [Hart] as the attorney for the [Estate]. Although no claim is being asserted against [Hart] for his conduct relating to anything other than his services to the [Estate], the parties would stipulate that John Hart did provide legal advice in some form

2

to [Johnson] in other personal matters, including:

   a.  He did write checks for her personal bills;

   b.  He did help in obtaining a Restraining Order for [Johnson] and her grandmother against [Johnson's] former husband;

   c.  He did help [Johnson] recover her cats from a friend;

   d.  He did help in filing a suit for damages to [Johnson's] ex-husband's car;

   e.  He did help [Johnson] with respect to qualifying as Guardian for her sister.

5.   John Midgett ["Midgett"] was appointed Administrator C.T.A. of the [Estate] when an Order was entered on July 1, 2005 removing [Johnson] as the Executrix of the [Estate].

6.   At no time prior to [Midgett's] winding up the [Estate] and filing the final accounting for approval did the [Estate] ever file a claim against John Hart.

7.   When [Midgett] completed his responsibilities as Administrator C.T.A., Andrea S. Johnson had died, and [Johnson] was the sole beneficiary under the Last Will and Testament of Peggy Johnson.  [Midgett], as Administrator C.T.A. of the [Estate], submitted the final accounting for the [Estate], which was approved on June 5, 2006, at which time [Johnson] inherited all of the assets of the [Estate] as the sole beneficiary of the Estate.

8.   On October 18, 2005, [Midgett], as Administrator C.T.A. of the [Estate], executed an Assignment of Interest in Real Estate Contract whereby the [Estate] assigned to [Johnson] all of

3

the Estate's right, title and interest in and to that certain written instrument by and between the [e]state of Peggy Lee Anderson Johnson and D.M. Barbini Contracting, Inc. dated October 21, 2002 for the purchase of Lot 16, Phase I, Seaboard Forest on Live Oak Trail, Virginia Beach, Virginia and for the construction of a residence thereon.

9. The Final Accounting for the [Estate] was filed and approved on June 5, 2006, at which time the Estate was closed.

10. The lawsuit that has been filed by [Johnson] was filed in her individual capacity and has not been filed as a fiduciary, and as of this time, no lawsuit has been filed by the [Estate] against [Hart].

In his memorandum, Hart argued that Johnson was not the proper party to the legal malpractice action because "[i]n order to maintain a claim for legal malpractice, a plaintiff must plead and prove, inter alia, that an attorney-client relationship existed between the plaintiff and the defendant." In this case, Hart continued, "the attorney-client relationship that Hart purportedly breached was between Hart and the Estate."

Johnson argued that Code § 8.01-13 permitted her, as a beneficial owner of the Estate, to bring suit in her individual capacity. Hart responded that Code § 8.01-13 "does not answer the question whether Ms. Johnson is the 'beneficial owner' of the legal malpractice claim. Rather, this section 'simply stipulates that [beneficial owners] of claims can sue in their

4

own names.'"  Finally, Hart contended, "to find that Ms. Johnson inherited the legal malpractice claim belonging to the Estate would be contrary to Virginia common law and public policy that legal malpractice claims cannot be assigned."

In her memorandum in opposition to Hart's motion for summary judgment, Johnson conceded that legal malpractice claims are not assignable under Virginia law, but she argued Code § 8.01-13 distinguishes beneficial ownership from assignment.  She further argued that a beneficiary, devisee, legatee or donee under a will is a beneficial owner of the assets of the estate, and for that reason Code § 8.01-13 permits such a beneficiary to bring a legal malpractice action in her own name.

The trial court issued a letter opinion granting Hart's motion for summary judgment holding that Johnson, "as a beneficiary [of the Estate,] possesses beneficial ownership of the [E]state's legal malpractice claim."  The trial court then acknowledged that while Code § 8.01-13 "would therefore appear to allow her to proceed," "she is the functional equivalent of an assignee."  Accordingly, because this Court has interpreted Code § 8.01-26 to exclude the assignment of legal malpractice claims, the trial court reasoned that Code § 8.01-13 should not "serve to override the public policy against suits by strangers to the personal representative-attorney relationship."

5

The trial court later entered an order which incorporated its letter opinion, granted Hart's motion for summary judgment, and dismissed Johnson's complaint with prejudice. Counsel for Hart endorsed this order "[s]een and consented to," and counsel for Johnson endorsed the order "[s]een and objected to."

Johnson timely filed her notice of appeal and we granted an appeal on the following assignment of error:

1.  The trial court erred in granting summary judgment in favor of Hart in holding that Johnson, as a beneficial owner of a legal malpractice claim accruing to the Estate, lacked legal standing to maintain her action against Hart.

We also granted Hart's assignment of cross-error:

1.  The trial court erred in applying Virginia Code § 8.01-13 to the facts in this case.

## II. ANALYSIS

### A. Standard of Review

In this case, the trial court granted Hart's motion for summary judgment relying upon the stipulated facts presented by the parties. "[W]e conduct a review of the trial court's application of law to the undisputed facts." Virginia College Building Authority v. Lynn, 260 Va. 608, 622, 538 S.E.2d 682, 688 (2000). Therefore, Johnson's assignment of error and Hart's assignment of cross-error "are questions of law which we review de novo." Davenport v. Little-Bowser, 269 Va. 546, 552, 611 S.E.2d 366, 369 (2005).

### B. Hart's Assignment of Cross-Error

6

On brief to this Court, Johnson argues that Hart waived his objection to the trial court's holding that Johnson was a beneficial owner pursuant to Code § 8.01-13 when counsel for Hart endorsed the trial court's order "[s]een and consented to."  This argument misapprehends the language of Code § 8.01-384, which provides in pertinent part:

> No party, after having made an objection or motion known to the court, shall be required to make such objection or motion again in order to preserve his right to appeal, challenge, or move for reconsideration of, a ruling, order, or action of the court.  No party shall be deemed to have agreed to, or acquiesced in, any written order of a trial court so as to forfeit his right to contest such order on appeal except by express written agreement in his endorsement of the order.

The first question before this Court is whether Hart expressly waived the arguments he presented to the trial court in his memorandum in support of his motion for summary judgment, thereby precluding him from assigning error to the portion of the trial court's letter opinion that was adverse to him.

Hart's endorsement as "[s]een and consented to" was no more an express waiver of his objection to the trial court's unfavorable ruling than was Johnson's endorsement of the order as "[s]een and objected to" an objection to that portion of the same ruling, which was favorable to her.  Rather, the context of Hart's endorsement, as the prevailing party, indicates that he consented to the trial court's order granting his motion for

7

summary judgment.  With regard to the trial court's ruling that Johnson was a beneficial owner of a legal malpractice action pursuant to Code § 8.01-13, Hart clearly stated his opposition to this ruling in memoranda before the court and cannot be deemed to have abandoned this position by acquiescing in a summary judgment order in his favor.

C.   Beneficial Ownership of a Legal Malpractice Claim

Code § 8.01-13 provides in pertinent part, "[t]he assignee or beneficial owner of any bond, note, writing or other chose in action, not negotiable may maintain thereon in his own name any action which the original obligee, payee, or contracting party might have brought."  On brief, Johnson concedes that Virginia law prohibits the assignment of legal malpractice claims, notwithstanding Code § 8.01-26.[2]  Similarly, we hold today that Code § 8.01-13 does not permit beneficial ownership of a cause of action for legal malpractice.

Virginia has adopted the strict privity doctrine in legal malpractice cases; as a threshold requirement, a plaintiff must demonstrate the existence of an attorney-client relationship. "It is settled in the Commonwealth that no cause of action exists in cases [involving a claim solely for economic losses]

---

[2] Code § 8.01-26 provides in pertinent part:  "Only those causes of action for damage to real or personal property, whether such damage be direct or indirect, and causes of action ex contractu are assignable."

8

absent privity of contract." Copenhaver v. Rogers, 238 Va. 361, 366, 384 S.E.2d 593, 595 (1989).

> "A cause of action for legal malpractice requires the existence of an attorney-client relationship which [gives] rise to a duty, breach of that duty by the defendant attorney, and that the damages claimed by the plaintiff client must have been proximately caused by the defendant attorney's breach." Rutter v. Jones, Blechman, Woltz & Kelly, P.C., 264 Va. 310, 313, 568 S.E.2d 693, 695 (2002). Thus, "an action for the negligence of an attorney in the performance of professional services, while sounding in tort, is an action for breach of contract . . . ." Oleyar v. Kerr, 217 Va. 88, 90, 225 S.E.2d 398, 400 (1976); accord Shipman v. Kruck, 267 Va. 495, 501, 593 S.E.2d 319, 322 (2004). It is the contract formed between an attorney and a client that gives rise to the attorney-client relationship; but for the contract, the attorney owes no duty to the client. O'Connell v. Bean, 263 Va. 176, 180, 556 S.E.2d 741, 743 (2002).

Cox v. Geary, 271 Va. 141, 152, 624 S.E.2d 16, 22 (2006).

In MNC Credit Corp. v. Sickels, 255 Va. 314, 497 S.E.2d 331 (1998), we answered the question "whether a claim of legal malpractice against an attorney may be assigned by a former client to a third party." Id. at 316, 497 S.E.2d at 332. We held that Code § 8.01-26 "does not abrogate the common law rule which prohibits the assignment of legal malpractice claims in this Commonwealth because the General Assembly did not plainly manifest an intent to do so." Id. at 318, 497 S.E.2d at 333. In view of the "highly confidential and fiduciary relationship between an attorney and client," we reasoned, "the common law

9

rule which prohibits the assignment of legal malpractice claims safeguards the attorney-client relationship which is an indispensable component of our adversarial system of justice." Id. at 318, 319, 497 S.E.2d at 333, 334.

This same policy precludes a testamentary beneficiary from maintaining, in her own name, a legal malpractice action against an attorney with whom an attorney-client relationship never existed. To hold otherwise would implicate the same concerns that counsel against the assignment of legal malpractice claims. Although Code § 8.01-13 permits the "beneficial owner of any . . . chose in action" to maintain in her own name any action the original contracting party might have brought, the common law has long provided that this particular chose in action requires the existence of an attorney-client relationship as a threshold element. See Ayyildiz v. Kidd, 220 Va. 1080, 1086, 266 S.E.2d 108, 112-13 (1980).

In this case, no such relationship existed between Johnson and Hart. As the stipulation indicated, Hart was retained to represent the Estate, not Johnson. Additionally, "the General Assembly did not plainly manifest an intent" in Code § 8.01-13 to "abrogate the common law rule which prohibits the assignment of legal malpractice claims in this Commonwealth." MNC Credit Corp., 255 Va. at 318, 497 S.E.2d at 333. Similarly, the trial

10

court erred when it held that Johnson, "as a beneficiary [of the Estate,] possesses beneficial ownership of the [E]state's legal malpractice claim."  Despite this error, the trial court reached the correct resolution of the issue.

### III.  CONCLUSION

We hold that the trial court correctly concluded that Johnson lacked standing to maintain a legal malpractice claim against Hart.  For the reasons stated herein, we will affirm the judgment of the trial court granting Hart's motion for summary judgment.

<u>Affirmed.</u>