JUSTICE McCLANAHAN, dissenting.
 

 Because the rule of strict privity in legal malpractice actions has not been abolished in Virginia, I would hold that the Richmond Society for the Prevention of Cruelty to Animals ("RSPCA") does not have standing to sue for breach of the legal services agreement between Alice Louise Cralle Dumville and James B. Thorsen. The determination of whether to abolish the common law privity requirement is a policy decision that should be made by the General Assembly, not this Court. Therefore, I dissent.
 

 "Virginia has adopted the strict privity doctrine in legal malpractice cases."
 

 Johnson v. Hart ,
 
 279 Va. 617
 
 , 624,
 
 692 S.E.2d 239
 
 , 243 (2010). In fact, "the common law has long provided that [a legal malpractice action] requires the existence of an attorney-client relationship as a threshold requirement." Id. at 626,
 
 692 S.E.2d at 244
 
 . The requirement of privity is grounded in the " 'highly confidential and fiduciary relationship between an attorney and client' " and " 'safeguards the attorney-client relationship which is an indispensable component of our adversarial system of justice.' " Id. at 625,
 
 692 S.E.2d at 243
 
 (quoting MNC Credit Corp. v. Sickels ,
 
 255 Va. 314
 
 , 318-19,
 
 497 S.E.2d 331
 
 , 333-34 (1998) ). We have held that this policy underlying the requirement of privity "precludes a testamentary beneficiary from maintaining, in her own name, a legal malpractice action against an attorney with whom an attorney-client relationship never existed." Id. at 625,
 
 692 S.E.2d at 244
 
 .
 
 [1]
 

 "By statute in Virginia, it is provided that: 'Every attorney at law shall be liable to his client for any damage sustained by him by the neglect of his duty as such attorney.' " Glenn v. Haynes ,
 
 192 Va. 574
 
 , 580,
 
 66 S.E.2d 509
 
 , 512 (1951) (emphasis added) (quoting former Code § 54-46, predecessor to Code § 54.1-3906 ); see Code § 54.1-3906 ("Every attorney shall be liable to his client for any damage sustained by the client through the neglect of his duty as such attorney.") (emphasis added); Ripper v. Bain ,
 
 253 Va. 197
 
 , 202,
 
 482 S.E.2d 832
 
 , 835 (1997) ("An attorney is liable to the client for damages caused by the attorney's negligence.") (citing Code § 54.1-3906 ). The General Assembly has dispensed with the requirement of privity to allow actions resulting from legal malpractice concerning an irrevocable trust where a legal services contract existed between the grantor of the trust and the attorney prior to the grantor's death. See Code § 64.2-520(B) (permitting action for damages to the grantor, the estate, or the trust, by the grantor's personal representative or the trustee if such damages are incurred
 after the grantor's death).
 
 [2]
 
 The General Assembly has not abolished the common law requirement of privity for any other legal malpractice actions.
 

 Contrary to the majority's suggestion, this Court did not abandon the requirement of privity in legal malpractice actions in Copenhaver v. Rogers ,
 
 238 Va. 361
 
 ,
 
 384 S.E.2d 593
 
 (1989). Although, in that case, the Court discussed cases from other jurisdictions that have permitted third-party beneficiary claims
 against attorneys and ultimately ruled that the claim of the beneficiaries in Copenhaver did not meet traditional rules governing third-party beneficiary claims, the Court did not address the issue of whether the common law requirement of privity in legal malpractice actions has been, or should be, abandoned in Virginia to accommodate third-party beneficiary claims against attorneys. This issue is squarely before the Court in this case and demands a careful and thorough discussion of the policies underlying the requirement of strict privity and the role this Court should play in determining whether this common law requirement should be abolished.
 
 [3]
 

 The abolishment of the common law requirement of privity in legal malpractice actions presents competing public policy concerns. While acknowledging the need to have attorney accountability in the area of estate planning, many state courts have refused to abandon the privity requirement in actions for legal malpractice in this context. See, e.g. , Robinson v. Benton ,
 
 842 So.2d 631
 
 , 637 (Ala. 2002) ("[W]e decline to change the rule of law in this state that bars an action for legal malpractice against a lawyer by a plaintiff for whom the lawyer has not undertaken a duty.");
 

 Baker v. Wood, Ris & Hames, PC ,
 
 364 P.3d 872
 
 , 882 (Colo. 2016) (extending third-party beneficiary theory of contract liability to legal malpractice claims by intended beneficiaries of a will "is contrary to each of the settled policies underlying the strict privity rule to which Colorado courts have long adhered, and we perceive no justifiable policy reason for so extending attorney liability"); Noble v. Bruce ,
 
 349 Md. 730
 
 ,
 
 709 A.2d 1264
 
 , 1275 (Md. Ct. App. 1998) ("We decline the beneficiaries' invitation to create a new rule in Maryland governing attorney liability to nonclients arising out of will drafting or estate planning."); Schneider v. Finmann ,
 
 15 N.Y.3d 306
 
 ,
 
 907 N.Y.S.2d 119
 
 ,
 
 933 N.E.2d 718
 
 , 721 (2010) ("[S]trict privity remains a bar against beneficiaries' and other third-party individuals' estate planning malpractice claims absent fraud or other circumstances."); Shoemaker v. Gindlesberger ,
 
 118 Ohio St.3d 226
 
 ,
 
 887 N.E.2d 1167
 
 , 1172 (2008) ("While recognizing that public-policy reasons exist on both sides of the issue, we conclude that the bright-line rule of privity remains beneficial. The rule provides for certainty in estate planning and preserves an attorney's loyalty to the client."); Barcelo v. Elliott ,
 
 923 S.W.2d 575
 
 , 579 (Tex. 1996) ("We therefore hold that an attorney retained by a testator or settlor to draft a will or trust owes no professional duty of care to persons named as beneficiaries under the will or trust.").
 

 Chief among the policy reasons underlying the rule of privity is the preservation of the sanctity of the attorney-client relationship. "Primarily, the [privity] rule is used to protect the attorney's duty of loyalty and the attorney's effective advocacy for the client." Shoemaker ,
 
 887 N.E.2d at 1171
 
 . "The strict privity rule ensures that attorneys may represent their clients without the threat of suit from third parties who may compromise that representation. Otherwise, an attorney's preoccupation or concern with potential negligence claims by third parties might diminish the quality of legal services provided to the client if the attorney were to weigh the client's interests against the possibility of third-party lawsuits."
 
 Id.
 
 ; see also Baker ,
 
 364 P.3d at 877
 
 ("[L]imiting an attorney's liability to his or her clients protects the attorney's duty of loyalty to and effective advocacy for the client."); Barcelo ,
 
 923 S.W.2d at 578-79
 
 (preserving a bright-line privity rule "will ensure that
 attorneys may in all cases zealously represent their clients without the threat of suit from third parties compromising that representation").
 
 [4]
 
 The privity rule also serves to protect against the potential for conflicting duties owed to clients and third parties by the attorney. "[E]xpanding attorney liability to non-clients could result in adversarial relationships between an attorney and third parties and thus give rise to conflicting duties on the part of the attorney." Baker ,
 
 364 P.3d at 877
 
 . "Such conflicting duties and loyalties, in turn, could constrain the attorney's ability to represent his or her client properly."
 
 Id.
 
 Thus, "without the strict privity rule, the attorney could have conflicting duties and divided loyalties during the estate planning process." Shoemaker ,
 
 887 N.E.2d at 1171
 
 .
 

 The abandonment of privity in legal malpractice actions also raises justifiable concerns over uncertain and unlimited liability as well as the effect on the availability of legal services. As the Supreme Court of Colorado noted, "if an attorney's duty of care were extended to third parties, then the attorney could be liable to an unforeseeable and unlimited number of people." Baker ,
 
 364 P.3d at 878
 
 . "The impact of an expansion of attorney liability to third parties would not be limited to the attorneys. As other courts have recognized, an expansion of attorney liability to allow claims by non-clients could deter attorneys from undertaking certain legal matters, thus compromising the interests of potential clients by making it more difficult for them to obtain legal services."
 
 Id.
 
 ; see also Schneider ,
 
 907 N.Y.S.2d 119
 
 ,
 
 933 N.E.2d at 721
 
 ("Relaxing privity to permit third parties to commence professional negligence actions against estate planning attorneys would produce undesirable results-
 uncertainty and limitless liability."); Shoemaker ,
 
 887 N.E.2d at 1171
 
 (observing that without the privity requirement "there would be unlimited potential liability for the lawyer").
 

 In the context of estate planning services, the abandonment of the privity doctrine is particularly troublesome since, under the majority's holding that the cause of action for legal malpractice accrues on the date of the client's death, an attorney may be held liable for malpractice decades after the testamentary documents were drafted for the client.
 
 [5]
 
 In general, when the alleged legal malpractice consists of a single, isolated act, the statute of limitations begins to run when the act is performed. Keller v. Denny ,
 
 232 Va. 512
 
 , 518,
 
 352 S.E.2d 327
 
 , 330 (1987) ; see Code § 8.01-230. When a course of professional services takes place over a period of time, the statute of limitations begins to run when the attorney's services related to that particular undertaking ended.
 
 Id.
 
 Yet, as this Court has observed, "[a] testator may, during his lifetime, alter his will or other testamentary papers as he pleases and whenever he chooses." Van Dam v. Gay ,
 
 280 Va. 457
 
 , 462,
 
 699 S.E.2d 480
 
 , 482 (2010). Thus, while the testator lives, "no beneficiary has anything more than a bare expectancy and no person has suffered any injury or damage as a result of his tentative dispositions."
 
 Id.
 
 Following this logic, the majority concludes that since third-party beneficiaries of a legal services agreement to draft a will suffer no damage until the testator's death, the statute of limitations does not begin to run until testator's death. Thus, attorneys in Virginia will now be subject to liability to nonclients for malpractice in connection with the preparation of testamentary documents for an indefinite, and potentially lengthy, period of time after the preparation of such documents.
 

 In my view, the decision of whether to abolish the privity requirement in legal malpractice actions and create a new cause of action against attorneys in favor of third-party beneficiaries should be left to the legislature. Although the public's interest in holding attorneys accountable in providing estate planning services is an
 important consideration, there are competing policy concerns raised by the extension of legal malpractice standing to nonclients. "The public policy of the Commonwealth is determined by the General Assembly [because] it is the responsibility of the legislature, and not the judiciary, ... to strike the appropriate balance between competing interests." Uniwest Constr., Inc. v. Amtech Elevator Servs. ,
 
 280 Va. 428
 
 , 440,
 
 699 S.E.2d 223
 
 , 229 (2010) (internal quotation marks and citation omitted). When the question of whether to recognize a new cause of action involves a multitude of competing interests,
 

 which courts are ill-equipped to balance,.... [o]n the other hand, the legislative machinery is specially geared to the task. A legislative change in the law is initiated by introduction of a bill which serves as public notice to all concerned. The legislature serves as a forum for witnesses representing interests directly affected by the decision. The issue is tried and tested in the crucible of public debate. The decision reached by the chosen representatives of the people reflects the will of the body politic. And when the decision is likely to disrupt the historic balance of competing values, its effective date can be postponed to give the public time to make necessary adjustments.
 

 Bruce Farms, Inc. v. Coupe ,
 
 219 Va. 287
 
 , 293,
 
 247 S.E.2d 400
 
 , 404 (1978).
 

 The majority's decision to recognize this new cause of action represents a radical departure from the existing law of legal malpractice in Virginia. Under the majority opinion, the common law requirement of privity in legal malpractice actions is now abolished in Virginia. From this date forward, attorneys will owe a legal duty to nonclients by virtue of legal services agreements with their clients whenever a "lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient."
 
 [6]
 
 In the specific context of estate planning in which the cause of action will accrue upon the client's death, attorneys will be subject to liability for malpractice for a
 period of time that could extend well beyond the date that the testamentary documents were drafted. Such uncertain and unlimited liability will undoubtedly deter attorneys from offering estate planning services. Additionally, this expansion of liability will likely lead to higher malpractice insurance premiums and ultimately affect the ability of potential clients to obtain affordable estate planning services from attorneys who choose to continue to offer such services. The common law requirement of privity in legal malpractice actions may "produce inequities," but "it is the role of the General Assembly, not the courts, to change a rule of law that has been relied upon by the bench and bar for many years." Van Dam , 280 Va. at 462, 699 S.E.2d at 483.
 

 For the foregoing reasons, I would hold that the RSPCA lacked standing to sue Thorsen for legal malpractice and would, therefore, reverse the judgment of the circuit court overruling the demurrer.
 

 The majority concludes that the "holding" in Johnson is "inapplicable" because the testamentary beneficiary pursued her claim as a beneficial owner under Code § 8.01-13 and "never argued that she was an intended third-party beneficiary." Yet, the majority's conclusion ignores the ratio decidendi for the Court's holding in Johnson-the common law requirement of the existence of an attorney-client relationship to maintain a legal malpractice action and the underlying policy of such requirement, which also precludes assignment of legal malpractice claims.
 

 The statute provides that "[a]n action for damages, including future tax liability, to the grantor, his estate or his trust, resulting from legal malpractice concerning an irrevocable trust shall accrue upon completion of the representation in which the malpractice occurred." Code § 64.2-520(B) (emphasis added). "An action for damages pursuant to this section in which a written contract for legal services existed between the grantor and the defendant shall be brought within five years after the cause of action accrues" and "[a]n action for damages pursuant to this section in which an unwritten contract for legal services existed between the grantor and the defendant shall be brought within three years after the cause of action accrues." Id.
 

 Despite the majority's implication otherwise, the Court in Ward v. Ernst & Young,
 
 246 Va. 317
 
 ,
 
 435 S.E.2d 628
 
 (1993), made no comparison between accountants and attorneys in its analysis of the third-party beneficiary claim in that case. In fact, the Court did not discuss the privity requirement in legal malpractice actions or even cite to Copenhaver in the context of its discussion of that claim.
 

 Discussing the scenario in which an attorney may have delayed in ensuring a will was properly executed, the Supreme Court of Texas observed:
 

 In most cases where a defect renders a will or trust invalid, however, there are concomitant questions as to the true intentions of the testator. Suppose, for example, that a properly drafted will is simply not executed at the time of the testator's death. The document may express the testator's true intentions, lacking signatures solely because of the attorney's negligent delay. On the other hand, the testator may have postponed execution because of second thoughts regarding the distribution scheme. In the latter situation, the attorney's representation of the testator will likely be affected if he or she knows that the existence of an unexecuted will may create malpractice liability if the testator unexpectedly dies.
 

 The Court stated, "we are unable to craft a bright-line rule that allows a lawsuit to proceed where alleged malpractice causes a will or trust to fail in a manner that casts no real doubt on the testator's intentions, while prohibiting actions in other situations." Barcelo,
 
 923 S.W.2d at 578
 
 .
 

 In contrast, in the one instance in which the General Assembly has dispensed with the requirement of privity to permit a legal malpractice action by a nonclient, the General Assembly has provided that the action "shall accrue upon completion of the representation in which the malpractice occurred." Code § 64.2-520(B) (emphasis added) (permitting action for damages to the grantor, the estate, or the trust, by the grantor's personal representative or the trustee if such damages are incurred after the grantor's death).
 

 Although today's opinion is rendered in the context of an action resulting from services provided in connection with a will, the majority's discussion, as well as its citation to the Restatement (Third) of the Law Governing Lawyers, § 51 (2000), signals the Court's intention to abolish the requirement of privity in all legal malpractice actions.