COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Causey, Lorish and White
Argued at Salem, Virginia


MARK A. MILLER, ET AL.

                                          MEMORANDUM OPINION[*]
v.       Record No. 0610-23-3             JUDGE LISA M. LORISH
                                             APRIL 23, 2024

W. DEREK MALCOLM


FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
Fredrick A. Rowlett, Judge

Kenneth D. Hale (The Hale Law Firm, on briefs), for appellants.

David D. Hudgins (Hudgins Law Firm, P.C., on brief), for
appellee.


Mark Miller and Rhonda Miller bought a piece of land encumbered with a gas lease.

Nearly four years later, they sued W. Derek Malcolm, their real estate closing attorney, for legal

malpractice, alleging that Malcolm's title examination failed to discover and disclose the gas

lease and the gas company's plans for new drilling.  The Millers failed to plead that Malcolm had

any contractual duty to investigate the effect of that lease.  Even assuming that Malcolm's

incomplete title examination breached a duty of care to the Millers, the Millers already had

actual notice of the gas lease.  Therefore, we agree with the circuit court that the Millers failed to

plead that Malcolm's failure to disclose the same was the proximate cause of any harm and

affirm the circuit court's decision to sustain Malcolm's demurrer.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

In late 2017, the Millers sought to buy 162 acres on Gas Well Road in Bristol ("the Property"). Saltville Gas Storage, LLC held, and continues to hold, a gas lease on the Property. During a pre-purchase physical inspection of the Property, the Millers noticed that a portion of land was fenced in and contained "equipment pertaining to [a] gas injection well" that was owned by Saltville Gas. The Millers "inquired" about the status of the gas lease "through" their real estate agent and "were advised" that there were no plans for more wells in that area.

The Millers closed on the Property in February 2018. Their closing attorney, Malcolm, also an agent for Fidelity National Title Insurance Company, performed a title search on the Property, collecting $250 for the title search, and reported his findings to Fidelity. Fidelity then issued an owner's title insurance policy to the Millers. The Millers also paid Malcolm $375 for his closing services. Less than three weeks after closing on the Property, the Millers received a letter from Saltville Gas stating that the company was "seeking to drill two new wells" on the Property. The letter "request[ed] permission to survey a portion of your land" and enclosed a "survey permission form." Before the end of the month, agents of Saltville Gas entered the Property to survey the land.[2] Soon after, Saltville Gas began construction on the Property to install a new gas injection site. Construction lasted for several months, and during some of that time, the Millers were forced to live in a motel.

Almost four years after closing, the Millers filed a complaint in the Circuit Court of Washington County alleging that Malcolm breached his duty of care as their closing attorney.

---

[1] When reviewing a court's decision to sustain a demurrer, we "accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff." *Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 164 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)).

[2] The complaint does not allege that the Millers refused to give permission or otherwise resisted the development of the new wells.

The complaint alleges that Malcolm "failed to discover the Saltville Gas lease during his title examination on the Property and amendments to the same affecting the Property and failed to disclose the same in his title report on the Property." Because of the "gas lease on the Property," the complaint alleges that "the duties of Malcolm in conducting a title examination and report on the Property differ from that of a standard title examination and report," and asserts that Malcolm breached his duty to ensure that the Millers received marketable title.

In total, the complaint identifies the following as "Malcolm's breach of his duties." First, the Millers state that Malcolm failed to discover and report the Saltville Gas lease and its amendments during his title examination. The Millers also claim that Malcolm failed to contact the Federal Energy Regulatory Commission ("FERC") or the Virginia Department of Mines, Minerals and Energy ("DMME") "to see if there was a gas well work permit issued for any gas well" on the Property. Finally, the Millers allege that Malcolm failed to contact the prior owners of the Property to obtain from them an "Affidavit of Non-Development and Non-Production" as well as determine whether Saltville Gas used the gas well.[3]

The complaint alleges that but for Malcolm's failure to discover and disclose the gas lease on the Property, and his failure to discover the future plans of the lessee, the Millers would not have purchased the Property. The Millers also allege that they suffered damages because the value of the Property sunk because of the expansion of the Saltville Gas operations. The Millers seek $250,000 in damages and attorney fees.

In response, Malcolm demurred, arguing that the complaint failed to state a cause of action because the duties enumerated by the Millers were outside the scope of Malcolm's role as

---

[3] According to the Millers, such an affidavit would have provided that there has been no gas produced by the Saltville Gas lease, "that the acreage covered is not part of a voluntary unitization agreement, or that any portion of the Property has been included in a forced pooling order before the agency having jurisdiction over the gas well."

a closing attorney. Malcolm also argues that even if he did breach a duty of care, the Millers knew of the gas lease on the Property before their purchase, so his failure to investigate or disclose the gas lease did not affect their decision to buy the Property.

The trial court sustained Malcolm's demurrer, agreeing that the complaint did not state a cause of action because the Millers knew about the lease and gas well on the Property. The court concluded Malcolm did not have a duty to go beyond his role as a title examiner to contact administrative agencies, the sellers, or obtain an affidavit as alleged in the complaint, and that the Millers—not Malcolm—had the responsibility to make any further inquiry about the lease. The court also found that any breach of Malcolm's duty from failing to uncover the lease did not harm the Millers because they already knew about the lease and gas well. The Millers appealed the trial court's decision to sustain the demurrer.

ANALYSIS

A. Standard of Review

A demurrer "determine[s] whether a complaint states a cause of action upon which the requested relief may be granted," *Assurance Data, Inc. v. Malyevac*, 286 Va. 137, 143 (2013), and "tests the legal sufficiency of facts alleged in pleadings, not the strength of proof," *id.* (quoting *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 557 (2011)). In considering a demurrer, a court may consider the "complaint and any attachments to that complaint." *TC MidAtlantic Dev., Inc. v. Commonwealth*, 280 Va. 204, 212 (2010). The trial court "assumes that all material facts, implied facts[,] and reasonable inferences from those facts that are properly alleged in the complaint are true." *Desetti v. Chester*, 290 Va. 50, 53 (2015) (alteration in original) (quoting *Brown v. Jacobs*, 289 Va. 209, 212 n.2 (2015)). Because a trial court's decision to sustain a demurrer is a question of law, this Court reviews it de novo. *Id.* at 56.

- 4 -

B. Elements of Legal Malpractice

A complaint must state the facts "with sufficient definiteness" to enable a court to find that a cause of action exists on the basis of the pleaded facts. *Dunn*, 281 Va. at 558 (quoting *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122 (2006)). To state a cause of action for legal malpractice, a plaintiff must plead facts with sufficient definiteness to establish three elements: duty, breach, and proximate causation. *Williams v. Joynes*, 278 Va. 57, 62 (2009).

A duty is established by proving the "existence of an attorney-client relationship which gave rise to a duty." *Smith v. McLaughlin*, 289 Va. 241, 253 (2015) (quoting *Shipman v. Kruck*, 267 Va. 495, 501 (2004)). An attorney-client relationship exists when an attorney contracts with a client to provide legal services. *Johnson v. Hart*, 279 Va. 617, 625 (2010) ("It is the contract formed between an attorney and a client that gives rise to the attorney-client relationship; but for the contract, the attorney owes no duty to the client." (quoting *Cox v. Geary*, 271 Va. 141, 152 (2006))). Thus, a "legal malpractice claim is predicated upon breach of the duty created by the attorney-client contract." *Smith*, 289 Va. at 256. We review "a trial court's interpretation of a contract de novo." *Plunkett v. Plunkett*, 271 Va. 162, 166 (2006).

Next, to establish a breach of that duty between attorney and client, "a client must show that the attorney failed to exercise a reasonable degree of care, skill, and dispatch in rendering the services for which the attorney was employed." *Smith*, 289 Va. at 253 (quoting *Ripper v. Bain*, 253 Va. 197, 202-03 (1997)). Generally, whether an attorney exercised a reasonable degree of care or skill is a question of fact "to be decided by a fact finder, after considering testimony of expert witnesses." *Id.* (quoting *Heyward & Lee Constr. Co. v. Sands, Anderson, Marks & Miller*, 249 Va. 54, 57 (1995)). Even so, at times the "issue of breach is a matter of law," and thus is "reserved for determination by a court and cannot be the subject of expert testimony." *Id.*

Finally, to state a claim for malpractice, a plaintiff must establish that an attorney's breach of duty proximately caused the plaintiff's damages. *Williams*, 278 Va. at 62. "[A] 'proximate cause' is an act or omission that, in natural and continuous sequence unbroken by a superseding cause, produces a particular event and without which that event would not have occurred." *Id.* That is, the pleadings must explain why the attorney's actions constitute a but-for cause of the plaintiff's harm. *See* 13 Peter Nash Swisher et al., *Virginia Practice Series: Tort and Personal Injury Law* § 6:2 (2023 ed.) ("[T]here must be an allegation that the plaintiff would have prevailed in the underlying matter, or at least fared better economically, 'but for' the attorney's breach.").

C. The Millers successfully pleaded that Malcolm had a duty to perform a title search, and to locate and report the existence of the gas lease, but they have failed to plead any basis for a broader duty to uncover the future plans of the gas company.

The Millers pleaded that "Malcolm undertook the legal representation of the Millers for the purposes of closing the real estate transaction on the Property on behalf of the Millers, providing a title opinion on the Property for the Millers, and acting a[s] the title insurance agent issuing an owner's title insurance policy." Accepting this description of the contractual relationship as true, the Millers have pleaded the existence of a legal duty, established by contract. Because a legal malpractice case is a breach of contract action, damages are recoverable based on "contractually implied" duties. *Smith*, 289 Va. at 264. This means that Malcolm's duties to the Millers were defined by, and therefore limited to, the contract between them. As pleaded, that duty included closing the real estate transaction, providing a title opinion, and acting as the title insurance agent to obtain a title insurance policy.

So what is a title opinion?  Virginia, like most states, has a recording act.[4]  Recording acts have "two separate, but interdependent, purposes."  14 *Powell on Real Property* § 82.01.  First, to "protect purchasers who acquire interests in real property for a valuable consideration and without notice of prior interests from the enforcement of those claims."  *Id.*  Second, to "create a public record from which prospective purchasers of interests in real property may ascertain the existence of prior claims that might affect their interests."  *Id.*  If a claim or interest is recorded, then a prospective purchaser has constructive notice of the same.  *Pillow v. Southwest Va. Imp. Co.*, 92 Va. 144, 151-52 (1895).  Because a purchaser will be charged with having notice of anything recorded in public land records, a title examination is typically part of any real estate transaction to ensure that the current owner of the property "has a clear and marketable title to the property with the right to convey it."  14 *Powell on Real Property* § 82.01.

Here, the Millers paid Malcolm to undertake a title examination as part of closing on the Property.  Under the purchase agreement for the Property (attached to the complaint), if a title "examination reveal[ed] a title defect of a character that can be remedied by legal action or otherwise within a reasonable time," the Millers would have various rights as against the seller.  The Millers could negotiate with the seller about curing such a defect, they could walk away from the transaction, or they could "waive the defect and proceed to settlement with no adjustment to the Purchase Price."

The Millers argue that Malcolm's duty to uncover the recorded lease in the land records, as part of the title examination, also required him to conduct a follow-up investigation about the effect of that lease far afield of merely uncovering what was recorded in the land records.

---

[4] *See, e.g.*, Code § 55.1-407, providing that "Every . . . deed conveying any estate or term" is "void as to all purchasers for valuable consideration without notice not parties thereto and lien creditors, until and except from the time it is recorded in the county or city in which the property subject to such contract, deed, or bill of sale is located."

- 7 -

Specifically, they allege Malcolm had a duty to contact FERC or DMME "to see if there was a gas well work permit issued for any gas well" on the Property, to contact the prior owners of the Property to determine whether the gas well was in use by the leaseholder, and to obtain from the prior owners an "Affidavit of Non-Development and Non-Production." In other words, the Millers pleaded that Malcolm was required to do more than they contracted for: obtain (or here, create) an accurate title opinion which would have disclosed the existence of the gas lease. To support the argument that Malcolm was required to perform additional tasks to discover Saltville Gas's future plans for the Property, the Millers point to other states with statutory provisions allowing for the filing and recording of affidavits of non-production as evidence that a recorded lease has expired. But the duties a title examiner may have to identify the existence, or non-existence, of such affidavits in the land records of those states are not relevant in Virginia where there is no similar statutory provision.[5]

We find that the scope of representation, as pleaded by the Millers, was limited to closing the real estate transaction, which included undertaking an examination of the land records and providing a title opinion.[6] The Millers failed to plead the existence of any broader contractual relationship under which Malcolm agreed to perform additional tasks. As we discuss below, the Millers already knew there was a gas lease on the Property. If they wanted to expand Malcolm's

---

[5] The following states have affidavit of production statutes: Kansas, Kan. Stat. Ann. § 55-205 (2019), Nebraska, Neb. Rev. Stat. § 57-208 (2019), Iowa, Iowa Code § 458A.24 (2019), Colorado, Colo. Rev. Stat. § 38-42-106 (2019), and South Dakota, S.D. Codified Laws § 45-7-9 (2019); North Dakota, N.D. Cent. Code § 47-16-40. In North Dakota, for example, an "owner" of an "oil, gas, or mineral lease" may file with a county's "office of the recorder" "an affidavit setting forth the description of the lease, that the affiant is the owner thereof" and facts showing that a particular event has occurred which has extended the term of a lease.

[6] Because the existence of a duty is a question of law that is tied here to the scope of representation, we reject the Millers' contention that they should have been allowed to put on expert witnesses to opine about the extent of Malcolm's duties.

scope of representation to further investigate the possible future impact of that lease, they were free to try to contract with Malcolm for the same.

    D. Even assuming that Malcolm breached his duty to obtain a title opinion when he failed to uncover and disclose the gas lease, the Millers failed to plead that this breach was the proximate cause of their asserted damages.

Since the Millers pleaded that Malcolm owed them a duty to perform a title examination, we must consider whether they pleaded that a breach of that duty was the proximate cause of their alleged damages.

The Millers allege that Malcolm's title examination failed to uncover the recorded gas lease on the Property, as well as a later amendment to the lease. A recorded lease is plainly an encumbrance on land, and, under the purchase agreement, the Millers could have asked for a concession from the seller because of the lease or walked away from the purchase.

The Millers also argue that the lease prevented them from obtaining "marketable title" to the Property. Marketable title is title "which a reasonably well-informed and prudent person, acting upon business principles and with full knowledge of the facts and their legal significance, would be willing to accept, with the assurance that he, in turn, could sell or mortgage the property at its fair value." *Madbeth, Inc. v. Weade*, 204 Va. 199, 202 (1963). We will assume, without deciding, that the Millers sufficiently alleged that Malcolm's duty as the closing attorney included performing a title examination and that he breached that duty by failing to uncover the gas lease and its amendments in the land records.

Even assuming Malcolm's incomplete title examination breached his duty of care, we find that the Millers failed to plead that his failure to discover and disclose the Saltville Gas lease during the title examination process was a proximate cause of their alleged harm. The complaint alleges that had Malcolm discovered and disclosed "the extent of the gas lease during the title search on the Property, the Millers would not have purchased the Property." At oral argument,

counsel for the Millers conceded that the Millers knew about the "existence" of the lease, they just did not know about the "effects" of that lease. Indeed, according to the complaint, the Millers inspected the Property (located on Gas Well Road), noticed a fenced area with equipment relating to a gas injection well, and discovered that the equipment belonged to Saltville Gas. The Millers attached a copy of the lease to the complaint, and the lease is silent about any plans for future expansion on the Property. So had the title examination revealed the recorded copy of the lease, it would not have answered the questions the Millers now allege were important to them.[7]

In fact, the Millers did try to discover the "effects" of the lease, as they pleaded that they asked the listing agent of the Property about "the status of the gas lease." According to the complaint, the Millers were told "that there were no future plans to do anything additional to the gas wells in the area." The Millers did nothing more to confirm whether this information was correct or not, such as expanding the scope of Malcolm's representation to try to track down information about whether Saltville Gas did in fact have other plans for the Property.

As pleaded, then, the proximate cause of the harm the Millers have experienced from Saltville Gas's expansion of the gas wells on the Property was the Millers' own failure to do more due diligence, not Malcolm's failure to disclose the lease.

---

[7] Because they already had "full knowledge" that the lease existed, the failure to find it during the title examination could not have impacted marketable title. *See Madbeth, Inc.*, 204 Va. at 202 (defining marketable title as one that a "reasonably well-informed and prudent person" with "full knowledge" of the facts and their significance would be willing to accept).

CONCLUSION

The Millers failed to plead facts that demonstrate that Malcolm's breach of duty of failing to locate and report the gas lease proximately caused them to suffer damages. As a result, the Millers failed to state a cause of action for legal malpractice. For these reasons, we affirm the decision of the trial court.

*Affirmed.*